UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Pro-Troll Inc., *a California Corporation*,

      Plaintiff,

v.

Proking Spoon LLC, *a Michigan limited liability company*, and KMDA, Inc., *a Minnesota Corporation*,

      Defendants.

File No. 20-cv-01576 (ECT/LIB)

**OPINION AND ORDER**

---

Carl E. Christensen, Aaron D. Sampsel, and Christopher Wilcox, Christensen Law Office PLLC, Minneapolis, MN; and Peter Tormey, Antero & Tormey PC, Pleasant Hill, CA, for Plaintiff Pro-Troll Inc.

Kurt J. Niederluecke, Fredrikson & Byron, P.A., Minneapolis, MN; and Cara S. Donels, Fredrikson & Byron, P.A., Des Moines, IA, for Defendant KMDA, Inc.

---

Plaintiff Pro-Troll Inc. owns a design patent for a fishing lure. In this case, Pro-Troll accuses Defendants Proking Spoon LLC and KMDA, Inc.—who, along with Pro-Troll, are in the fishing-products industry—of infringing its design patent and of tortious interference with prospective economic relationships. KMDA seeks summary judgment on both of Pro-Troll's claims, and its motion will be granted. No reasonable jury could conclude that the asserted patent's design and KMDA's accused designs would appear to a hypothetical ordinary observer to be substantially the same, and the tortious interference claim both is preempted by federal law and fails on the merits.

I

The material facts are undisputed. Pro-Troll owns U.S. Design Patent No. D516,663, entitled "Fishing Lure," which issued on March 7, 2006, and expired on March 7, 2020. Am. Compl. Ex. A ("'663 Patent") [ECF No. 12-1]; Am. Compl. [ECF No. 12] ¶¶ 10–11. The '663 Patent claims "[t]he ornamental design for a fishing lure, as shown and described." '663 Patent. The "Description" in the Patent does not provide details or description of the design itself and simply identifies what view each figure shows. *Id.* The design shows a lure with a rectangular shape with rounded corners, not very thick, that bends at each end in opposite directions (one end up and one end down, or left and right, depending on the perspective) at about a 30° angle. There is an eyelet[1] on each end, on the bent portions. On the bent portion at one end, there is a fin shaped like a narrow box angling diagonally (relative to the sides of the lure); the eyelet on that end is between the fin and the short edge of the lure. On the same end and bent portion, and opposite the fin from the eyelet, there is an electric voltage generator that is: rounded on top and shaped like a cylinder sliced in half through its circular face; positioned at an angle—maybe 45°— to the nearby fin; parallel to the short end of the lure and perpendicular to the long end; and significantly shorter, both in height and length, than the fin. These aspects are shown in the figures in the Patent:

---

[1]     The words used here to describe certain parts or aspects of the design—"eyelets," "fin," and "electric voltage generator"—are used only for convenience. In the context of a design patent, the aspects of a patented or accused design need not literally be or do whatever the descriptive term is, as it is the visual appearance that matters. *See* Pl.'s Mem. Opp'n [ECF No. 42] at 4; Def.'s Reply [ECF No. 45] at 7 n.2.



'663 Patent figs. 1, 2, 5, 7.

In 2016, the United States Patent and Trademark Office instituted a reexamination proceeding of the '663 Patent, and a Reexamination Certificate was issued on January 6, 2020. Donels Decl. Ex. A [ECF No. 39-1] at 1; see Am. Compl. ¶ 12. The Reexamination confirmed the patentability of the Patent's sole claim and stated as follows for the "Reasons for Patentability and Confirmation":

> [I]t has been concluded that the patented design is patentably distinct over the prior art. In particular, no appropriate art references can be found to prove that the placement, orientation, and proportion of the electric voltage generator (A) in combination with double ring eyelets (B) are obvious expedients for that of an ordinary skilled designer before the filing of the '663 Patent.

Donels Decl. Ex. A at 2, 7–8. This statement was accompanied by the following figure, indicating which parts of the design were being discussed:



***Claimed Design***

*Id.* at 8.

Pro-Troll filed this action on July 15, 2020 [ECF No. 1] and amended the Complaint on September 9, 2020, Am. Compl. Pro-Troll alleges that several of Defendants' products infringe the '663 Patent, specifically the Pro King Double Rudder Salmon Flasher and flashers in KMDA's Inticer product line. Am. Compl. ¶¶ 13–16, 36. Pro-Troll also claims tortious interference with prospective economic relationships, alleging that "Defendants intentionally engaged in acts that were designed to and which did disrupt [the economic relationship between Pro-Troll and purchasers of fishing equipment]" and that these "acts were beyond those of mere competitors securing business for themselves and . . . independently unlawful or illegitimate." *Id.* ¶¶ 40–45. The acts of Defendants alleged by Pro-Troll are that Defendants manufacture, supply, and sell the accused products—which "incorporate[] all non-functional features of the '663 Design Patent"—and that after Pro-Troll sent Defendants cease-and-desist letters regarding such infringement, Defendants continued to infringe. *See id.* ¶¶ 13–20, 31.

4

On November 24, 2020, Pro-Troll filed an application for default against Defendant Proking Spoon for failure to plead or otherwise defend, and the Clerk of Court entered default the next day. ECF Nos. 24, 25. Pro-Troll has not moved for default judgment, so no judgment has been entered against Proking Spoon. Meanwhile, KMDA answered the Amended Complaint and counterclaimed for a declaratory judgment of noninfringement of the '663 Patent, tortious interference with contract, and tortious interference with prospective business relationships. Answer to Am. Compl. & Countercls. [ECF No. 19]. KMDA has now moved for summary judgment on Pro-Troll's claims, though not its own counterclaims. ECF No. 36. All deadlines in the Pretrial Scheduling Order were stayed pending the resolution of KMDA's motion. ECF No. 50. There is original jurisdiction over the patent infringement claim under 28 U.S.C. § 1338(a) and supplemental jurisdiction over the tortious interference claim under § 1367. *See* Am. Compl. ¶ 5.

## II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citation omitted).

A

1

Whereas a utility patent claims "any new and useful process, machine, manufacture, or composition of matter," 35 U.S.C. § 101, a design patent claims the overall ornamental design of—essentially, the appearance of—an article of manufacture, see 35 U.S.C. § 171. And "whereas a utility patent often includes a substantial textual specification culminating in various claims delineating the elements of the invention, a design patent is often little more than figures—various pictures of the entire article incorporating the claimed design." *Safco Prods. Co. v. Welcom Prods., Inc.*, 799 F. Supp. 2d 967, 975 (D. Minn. 2011); *see* 37 C.F.R. § 1.153(a) ("No description, other than a reference to the drawing, is ordinarily required."). The claim in a design patent is limited to what is shown in the application drawings, and the Federal Circuit has said that "[d]esign patents have almost no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). "A design patent only protects the novel, ornamental features of the patented design. Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (internal citations omitted).

A patent infringement analysis has two steps, the first of which, claim construction, "is determining the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (citation omitted), *aff'd*, 517 U.S. 370 (1996). "The second step is comparing the properly construed claims to the [design] accused of infringing." *Id.* (citation omitted). "Infringement of a

6

design patent is not determined by breaking down an accused device into elements and comparing those elements to corresponding limitations in a claim.  Rather, a court must apply the 'ordinary observer test.'" *Boost Oxygen, LLC v. Oxygen Plus, Inc.*, 477 F. Supp. 3d 871, 880 (D. Minn. 2020) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc)), *aff'd*, 843 F. App'x 322 (Fed. Cir. 2021).  This test is whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  "The ordinary observer test applies to the patented design in its entirety, as it is claimed.  Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) (cleaned up).

2

Starting with claim construction, each party's brief recites the relevant legal standards, including claim construction, but makes no specific argument as to claim construction.  *See generally* Def.'s Mem. Supp. [ECF No. 38]; Pl.'s Mem. Opp'n [ECF No. 42].  The parties also filed a Joint Patent Case Status Report, pursuant to the Scheduling Order, that says "the claim construction issue has already been raised in conjunction with KMDA's Motion for Summary Judgment," ECF No. 44 at 1, and includes a Joint Claim Construction Statement (in which KMDA proposes a detailed verbal construction), *id.* Ex.

A, but neither party referenced that Statement in briefing or at oral argument.  In any event, claim construction is the first step of the infringement analysis, and so it will be done.

Claim construction, analogous to statutory interpretation, is "a matter of law exclusively for the court." *Markman*, 52 F.3d at 977.  Although "trial courts have a duty to conduct claim construction in design patent cases," there is no "particular form that the claim construction must take." *Egyptian Goddess*, 543 F.3d at 679.  The Federal Circuit "has recognized that design patents typically are claimed as shown in drawings, and that claim construction is adapted accordingly." *Id.* (cleaned up).  "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.*  "[T]he court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful." *Id.*

This does not seem to be a case where a detailed verbal description of the design would be necessary or helpful.  A verbal description of the design has already been set out, *supra* Section I, and there is verbal description in the analysis below, but these descriptions are here because they are useful in explaining the decision, not because they are adopted as the claim construction.  Instead, the following construction of the '663 Patent is adopted: "The ornamental design for a fishing lure, as shown and described." '663 Patent.

3

Now to step two of the infringement analysis—comparing the construed claims to the design accused of infringing and applying the ordinary observer test—which again is:

"[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess*, 543 F.3d at 670 (citation omitted). "Under the ordinary observer test, the claimed and accused designs may be 'sufficiently distinct' and 'plainly dissimilar,' such that an ordinary observer clearly would not find the two designs 'substantially the same.'" *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898 (Fed. Cir. 2020) (quoting *Egyptian Goddess*, 543 F.3d at 678). And although a court is not obligated to conduct claim construction by issuing a detailed verbal description of the design, "a court may find it helpful to point out, either for a jury or in the case of a bench trial by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art." *Egyptian Goddess*, 543 F.3d at 680; *see also id.* at 676–77 ("Particularly in close cases, it can be difficult to answer the question whether one thing is like another without being given a frame of reference. The context in which the claimed and accused designs are compared, i.e., the background prior art, provides such a frame of reference and is therefore often useful in the process of comparison. Where the frame of reference consists of numerous similar prior art designs, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer."); *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (describing appropriate process of claim construction and infringement analysis, including "consider[ing] the numerous prior art references cited by the examiner on the face of the D167 patent, as well as other designs

identified by [the accused infringers]").  This may be helpful because the question before the court "is whether an ordinary observer, familiar with the prior art [designs closest to the patented design], would be deceived into believing the [accused design] is the same as the patented [design]."  *Egyptian Goddess*, 543 F.3d at 681.  "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art."  *Id.* at 676.

As KMDA points out, the Reexamination concluded that the '663 Patent's design was patentably distinct over the prior art because, at least, "no appropriate art references can be found to prove that the placement, orientation, and proportion of the electric voltage generator (A) in combination with double ring eyelets (B) are obvious expedients for that of an ordinary skilled designer before the filing of the '663 Patent."  Donels Decl. Ex. A at 7–8.  KMDA argues that this statement represents the scope of the Patent—the only thing that is covered, and so the only thing that needs to be considered and compared to the accused designs.  Def.'s Mem. Supp. at 12–13.

Pro-Troll does not offer much to persuade that KMDA's position about the meaning of the Reexamination is wrong.  Pro-Troll says that the examiner's conclusion does not limit the claim and is only a statement of *a* reason for patentability and confirmation of the patent claim, which the examiner is required to provide, and does not necessarily mean there were no other reasons.  Pl.'s Mem. Opp'n at 3–4.  That might be true in theory, but Pro-Troll has not identified any other reason the '663 Patent was patentable over the prior art, from the Reexamination or otherwise, or offered any discussion of how the patented

10

design compares to the prior art or how an ordinary observer would view the accused designs compared to the '663 Patent's design in light of the prior art.

The full Reexamination decision also does not identify any other reason the '663 Patent was patentable over the prior art. The decision includes detailed discussion of the '663 Patent compared to prior art. *See* Donels Decl. Ex. A at 9–17. For each individual prior art reference that the examiner concluded "raises a substantial question of patentability," the conclusion as to "[w]hy patentability is confirmed despite a substantial question of patentability being raised" was about the placement and appearance of the electric voltage generator, most often phrased in the same way as the given reason for patentability. *See id.* at 10, 13, 14, 15, 16, 17 ("[N]o appropriate references can be found to teach the unique placement, orientation, and proportion of the electric voltage generator (A) in combination with that of the double ring eyelets (B)."); *id.* at 11 ("[T]here is no corresponding reference to teach the unique placement, orientation, and proportion of the electric voltage generator (A) and the double ring eyelets (B) as identified in the above illustration of the claimed design."); *id.* at 12 (concluding that the prior art reference "shows a fishing lure with a similarly shaped electronic voltage generator" but "does not show a similarly located and oriented generator" and so "[c]onsidering the appearance of the generator's effect upon the overall appearance of the fishing lure and further considering the appearance of double ring eyelets," prior art could not be a secondary reference).

The prior art discussed by the examiner shows that several aspects of the '663 Patent's design—the rounded rectangular form with opposing bent ends, the eyelets at each

end, and a diagonal fin—are present in the prior art.  An ordinary observer familiar with the prior art, then, would be drawn to the electric voltage generator in the '663 Patent, as the aspect of the claimed design that differs from the prior art.  Comparing the '663 Patent's design to the accused designs, the ordinary observer, with that prior art context, would observe that while the claimed and accused designs are broadly similar—sharing an overall shape, eyelets on each end, and, on one end, a fin shaped like a narrow box angling diagonally relative to the sides of the lure—the claimed design has the electric voltage generator, with its particular orientation, position, shape, and size.  And the accused designs do not have this electric voltage generator; it is simply not there.  *See* Donels Decl. Exs. C, D (samples of accused designs); Def.'s Mem. Supp. at 9, 15 (photos of accused designs).  The accused designs do have, however, a second fin next to the first fin, positioned parallel to the first, shaped the same (like a narrow box), of a similar height, and of a somewhat shorter length.  An ordinary observer would not mistake the second fin for the electric voltage generator, given their differing orientations, positions, shapes, and length and height relative to the first fin.  No reasonable juror could conclude that the ordinary observer would be deceived into thinking the accused lures are the claimed lure design.  The claimed and accused designs are plainly dissimilar.

The analysis is similar to the conclusion the Federal Circuit reached in *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, where a prior art design had rhinestones on certain parts of the canister, but not other parts, including the bottom, and so "highlight[ed] that the key difference between the '172 patent and the accused design is that the bottom of the cylinder is decorated with rhinestones," which meant that "the attention of a

hypothetical ordinary observer conversant with bedazzled pepper spray canisters would be drawn to the presence or absence of rhinestones on the bottom of the cylinder." 836 F. App'x 895, 898 (Fed. Cir. 2020). The attention of the ordinary observer here, conversant with the prior art discussed by the examiner and by KMDA, would be drawn to the absence of the electric voltage generator, and this ordinary observer would not be deceived into believing the accused lures were the same as the patented lure. The *Super-Sparkly Safety Stuff* court also noted the "patent claims a very simple design," and consequently removing one of the elements of that simple design, as the accused design did, "is a significant departure from the claimed design." *Id.* The court concluded the patent and "accused design are thus plainly dissimilar," and "an ordinary observer would not find the two designs substantially the same." *Id.* Here, the design is fairly simple, and including a second fin, and not the electric voltage generator, is a significant departure.

Pro-Troll relies on legal principles that it is the overall appearance that matters—not an element-by-element comparison—and, since the accused designs are "virtually identical" to the claimed design, the additional fin in the accused designs "is an irrelevant ornamental feature" that should be ignored. Pl.'s Mem. Opp'n at 6–8.[2] Pro-Troll's general principles are right: "The ordinary observer test applies to the patented design in its

---

[2]      The only case Pro-Troll cites for something more than a general principle of law, *Dexas International Ltd. v. Tung Yung International (USA) Inc.*, No. 6:07cv334, 2008 WL 5773608 (E.D. Tex. Oct. 14, 2008), is not accurately represented: the quotation in the brief mashes up portions of text that appear several pages apart in the order, and the text Pro-Troll emphasizes is a quotation from a party's argument, not a statement of the court. *See* 2008 WL 5773608, at *2 (summarizing plaintiff's argument regarding "features added"); *id.* at *4 (analysis).

entirety, as it is claimed.  Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement."  *Crocs*, 598 F.3d at 1303 (cleaned up).  But the difference between the appearance of the electric voltage generator in the '663 Patent and the accused designs here is not minor—it jumps out at the observer, when the designs are compared side-by-side, that the piece next to the first fin is different in each.  In *Crocs*, the Federal Circuit remarked, "If the claimed design and the accused designs were arrayed in matching colors and mixed up randomly, this court is not confident that an ordinary observer could properly restore them to their original order without very careful and prolonged effort."  *Id.* at 1306.  The ordinary observer here would doubtless be able to sort out which lures are the claimed design and which the accused designs.

Pro-Troll's argument on this point also seems contradictory: Pro-Troll says that the second fin in the accused designs is both something "added" to the claimed design and something that the electric voltage generator was "exchange[d]" for.  Pl.'s Mem. Opp'n at 7.  These are different arguments: if the second fin is "added," then the point is that it should be ignored when comparing the designs.  If the second fin is "exchanged," then the point is that the second fin should not be ignored but rather viewed as the electric voltage generator.  But the outcome is the same.  If the argument is the latter and the second fin is taken as the electric voltage generator, then the answer is the comparison already done here, where the specific aspects of the second fin and electric voltage generator are so plainly dissimilar that, taken in light of the prior art and along with the rest of this fairly simple design, despite the similarities otherwise, the designs are sufficiently distinct.  If the

argument is the former and the second fin is ignored, then the accused design simply has nothing next to the first fin, where the electric voltage generator would be, and the designs are even more plainly dissimilar.

In sum, no matter how one gets there, despite the similarities between the '663 Patent's design and the accused designs, an ordinary observer taking into account the prior art would not be deceived into purchasing a lure with two parallel fins, supposing it to be a lure with one fin and an electric voltage generator.[3]

4

The remaining arguments of the parties can be addressed briefly. To wrap up KMDA's arguments, KMDA seems to argue that some or all aspects of the '663 Patent's design are functional, and such aspects, even if shared with the accused designs, cannot be considered in the analysis of a design patent. Def.'s Mem. Supp. at 15; *see also id.* at 8 (factual background stating that Pro-Troll's advertisements demonstrate the functional nature of many features of its products). The argument, if it is being made, is not very well-developed and seems best left alone on this record.[4]

---

[3]     Even if the scope of the patent is the whole design (that is, that the whole thing was patentable, not just, as KMDA contends, "the unique placement, orientation, and proportion of the electric voltage generator (A) in combination with the double ring eyelets (B)," see Def.'s Mem. Supp. at 13 (quoting the Reexamination, Donels Decl. Ex. A at 8)), given the fairly simple designs at issue here, the result of the ordinary observer test would be the same. The '663 Patent's design and the accused designs are not substantially the same, because the presence of a second fin rather than electric voltage generator in the accused designs is a significant departure from the claimed design. The designs are plainly dissimilar.

[4]     Pro-Troll took KMDA's argument to include questions of functionality, as it responded to the argument. Pl.'s Mem. Opp'n at 8–9.

For its part, Pro-Troll's remaining arguments appear to be that patent infringement is a question of fact that must be decided by a jury and that a question of fact remains because "the material fact of Defendant's infringement has yet to be decided." Pl.'s Mem. Opp'n at 2. The first is certainly a true statement generally, but as Pro-Troll sets it up, it suggests that patent infringement could never be decided on summary judgment. Between Rule 56's explicit sanctioning of deciding cases on summary judgment (assuming the Rule's requirements are met) and the many, many patent infringement cases so decided, simply saying that patent infringement is a question of fact for the jury gets Pro-Troll nowhere. *See, e.g.*, *Super-Sparkly Safety Stuff*, 836 F. App'x at 898–99 (affirming grant of summary judgment of noninfringement); *Lanard Toys*, 958 F.3d at 1345 (same); *Egyptian Goddess*, 543 F.3d at 683 (same); *see also* Def.'s Reply [ECF No. 54] at 3–4 (collecting cases).

As for the second part of Pro-Troll's argument—that a question of fact remains—the only factual dispute Pro-Troll identifies is whether KMDA infringed the '663 Patent. But Rule 56(a) does not just require a factual dispute; it requires both that the fact in dispute be material and that the dispute be genuine. *See Liberty Lobby*, 477 U.S. at 248. The fact of KMDA's infringement here is material, but the dispute is not genuine. The standard for a genuine dispute is not simply that the nonmoving party disagrees, even if the belief is sincere, with the position or conclusion of the moving party—if that were it, there would effectively be no summary judgment, as every single case would proceed to trial whenever the parties did not agree on the correct outcome of the suit. A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

16

The foregoing analysis here shows that a reasonable jury could not return a verdict for Pro-Troll. No genuine dispute remains, therefore, and summary judgment is appropriate.

At the hearing on this motion, Pro-Troll also argued that a factual finding of who the ordinary observer is—who that person is and what level of involvement in the purchasing activity the person would do—must be made, citing *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019). Tr. [ECF No. 51] at 17. It is true that the parties in *Columbia Sportswear* disputed the identity of the ordinary observer, but it does not seem that the Federal Circuit resolved that question or held that such questions must be answered to proceed to an infringement analysis, though the court concluded certain errors and other fact disputes precluded summary judgment. *See* 942 F.3d at 1130–32.

KMDA noted that Pro-Troll had not identified an ordinary observer that would create a fact issue. Tr. at 7, 25. KMDA argued that the definition of the ordinary observer would not matter in the end, since its position is that because the only feature of the '663 Patent's design that needs to be considered is the electric voltage generator, an ordinary observer of any kind would see the accused designs do not have that feature. *Id.* at 5, 25–26. Those points are persuasive. There is no genuine dispute on the definition of the ordinary observer here: no party has set forth what the definition should be (though at the hearing, KMDA noted that an appropriate ordinary observer might be a purchaser of fishing lures with knowledge of the prior art, *id.* at 7). If there were competing definitions of the appropriate ordinary observer, the dispute would not be material because it would not affect the outcome: the visual similarities and differences between the patented design

17

and accused designs are readily apparent, regardless of any particular background of the observer.

B

KMDA additionally moves to dismiss Pro-Troll's claim in Count II for tortious interference with prospective economic relationships. KMDA states that "Pro-Troll's allegation of tortious interference is based *only* on KMDA's alleged patent infringement." Def.'s Mem. Supp. at 17. Pro-Troll's argument on Count II does not contradict that reading of the Amended Complaint, stating: "Pro-Troll's claim for patent infringement is valid and the Defendants caused economic harm through their willful and continued infringement." Pl.'s Mem. Opp'n at 9. At the hearing, Pro-Troll stated that the accused lures are sold through the same distributors and stores as Pro-Troll's, that the lures are often displayed side-by-side, and the tortious interference results from the relationship between distributors carrying or not carrying the products, but Pro-Troll conceded that these details are not in the Amended Complaint. Tr. at 22–23.

With the claim alleged as it is (and even if the details noted at the hearing were in Pro-Troll's pleading), Pro-Troll's tortious interference claim must be dismissed, because the claim is preempted. A tortious interference claim by a patent holder against an accused infringer is not necessarily preempted.[5] In some cases, a deep dive into the law on preemption by the federal patent laws is necessary, but with the allegations here, this issue

---

[5]     "Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005).

18

is simple. "The patent laws will not preempt [tortious interference or unfair competition] claims if they include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999). But "courts have found that state law claims that hinge entirely on whether defendant infringed plaintiff's patent are preempted." *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-cv-60912, 2019 WL 78983, at *2 (S.D. Fla. Jan. 2, 2019) (collecting cases); *see also Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 506–08 (S.D.N.Y. 2018) (collecting cases showing that "where a plaintiff's unfair competition claim is premised on a defendant's alleged infringement of a patent, the claim is preempted by federal patent law" and concluding that one of patent holder's unfair competition claims was preempted but another was not). Here, there are no allegations about KMDA's (or Proking's) conduct in the marketplace, or conduct related in any way to Pro-Troll, beyond that Defendants' activities of manufacturing, marketing, and selling the accused products infringed the '663 Patent. *See* Am. Compl. ¶¶ 13–20, 31, 36. Pro-Troll's claim for tortious interference with prospective economic relationships is therefore preempted by federal patent law.

Preemption aside, since this claim is based only on Defendants' alleged patent infringement and summary judgment is granted to KMDA on infringement, this claim also would fail on the merits.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendant KMDA, Inc.'s Motion for Summary Judgment [ECF No. 36] is **GRANTED**;

2.      Plaintiff Pro-Troll Inc.'s claims are **DISMISSED WITH PREJUDICE**; and

3.      Pursuant to the Order Staying Litigation [ECF No. 50], within fourteen days of the date of this Order, the parties shall meet and confer and submit a joint proposed amended schedule or plan for resolution of this lawsuit.

Dated:  December 17, 2021                    s/ Eric C. Tostrud
                                             Eric C. Tostrud
                                             United States District Court